IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ALICE M. MANGUM, Individually, ) | Civil Action No.: 4:16-CV-02214-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| FIRST RELIANCE BANK and ) | |
| DOVENMUEHLE MORTGAGE, INC., ) | |
| ) | |
| Defendants. ) | |

Currently pending before the court is Defendants' Motion to Dismiss Plaintiff's Complaint. [ECF #5]. Both parties have had the opportunity to extensively brief the issues raised in the Motion, and this Court has thoroughly considered all pleadings filed in this case.[1] The Court will now consider this Motion.

**Factual Background and Procedural History**

On May 9, 2008 Plaintiff executed a Promissory Note (the "Note") and corresponding Mortgage (the "Mortgage") in favor of Defendant First Reliance Bank ("FRB") with a principal amount of $350,447.00 and an interest rate of 6.625%. [ECF #5-2]. On October 19, 2011, Defendant FRB commenced a foreclosure action against Plaintiff in the Court of Common Pleas for Florence County after Plaintiff defaulted on her monthly payment obligations. [ECF #5-2]. Plaintiff filed an Answer and Counterclaim in that lawsuit, including claims against FRB for negligent training and supervision and gross and wanton training and supervision. [ECF #5-2].

---

[1] Under Local Civil Rule 7.09 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

During the course of litigation, Plaintiff's loan was permanently modified by agreement dated May 1, 2013. [ECF #5-2]. Plaintiff acknowledges in her brief that a "previously completed loan modification" was entered into between Plaintiff and Defendant FRB on May 1, 2013. [ECF #7, p. 6]. The Parties entered into a Stipulation of Dismissal providing for a dismissal of all of Plaintiff's claims against Defendant FRB with prejudice. [ECF #5-2].

On May 8, 2015, Defendant FRB commenced a second foreclosure action after Plaintiff defaulted on the loan obligations provided for in the permanent modification. [ECF #5-2]. During the course of this second round of litigation, the case was stayed for foreclosure intervention until Defendant FRB served the Denial of Foreclosure Intervention on January 22, 2016. [ECF #5-2]. Defendants assert the denial of foreclosure intervention was based upon Plaintiff's failure to submit a complete loss mitigation package for review. [ECF #5-1, p. 2]. Plaintiff disputes the contention that she failed to provide all requested documentation to complete a loss mitigation package. [ECF #1, pp. 4-5]. To that end, Plaintiff filed an objection to the Denial of Foreclosure Intervention on February 17, 2016. [ECF #5-2]. In fact, Plaintiff asserts that she sent completed information to Defendants on several occasions. [ECF #1, pp. 4-8]. Around this time, Defendant FRB released the servicing rights to the subject loan to Defendant Dovenmuehle Mortgage, Inc. ("DMI") on September 3, 2015. Plaintiff asserts that on March 30, 2016, Defendant DMI again received her complete loss mitigation package via certified mail. [ECF #1, p. 10]. According to Defendant DMI, DMI continued the loss mitigation efforts with Plaintiff, and offered Plaintiff a trial modification program on April 11, 2016. [ECF #5-2]. Plaintiff admits she received two letters from Defendants on April 15, 2016. [ECF #1, p. 11]. The first letter, dated April 11, 2016, stated

2

that Defendants referred her loan to foreclosure. [ECF #1, p. 11]. The second letter, also dated April 11, 2016, stated that Defendants were offering Plaintiff a trial period plan for a mortgage modification. [ECF #1, p. 11]. However, because the trial payment was higher than her previous mortgage payment, and payment was demanded in less than two weeks, Plaintiff was unable to make the payment under this trial period plan. [ECF #1, p. 11].

The foreclosure action remains pending in state court. On June 24, 2016, Plaintiff commenced this action against Defendants in federal court, asserting violations of the Real Estate Settlement Procedures Act ("RESPA"), negligence, negligent training and supervision, and reckless and wanton training and supervision. [ECF #1, p. 17]. On August 1, 2016, Defendants filed their Motion to Dismiss Plaintiff's Complaint arguing that the Complaint fails to set forth sufficient facts to assert a violation of the loss mitigation procedures under the Real Estate Settlement Procedures Act ("RESPA"), failure to set forth causes of action for the negligence claims, and that the application of res judicata should apply as to Defendant FRB.

## Standard of Review

Defendants file their Motion pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the sufficiency of the facts alleged in a plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The United States Supreme Court recently stated that

3

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In considering a motion to dismiss, the factual allegations in a complaint are accepted as true, and the plaintiff is afforded the benefit of all reasonable inferences to be drawn from the allegations contained within the complaint. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## Discussion

### I. RESPA Claims

The Real Estate Settlement Protections Act ("RESPA") is designed to protect potential homeowners by requiring lenders to provide certain amounts of information throughout the loan settlement process. 12 U.S.C. § 2605 *et seq*.  The Consumer Financial Protection Bureau ("CFPB" or the "Bureau") implemented a set of mortgage servicing rules, effective January 10, 2014, which contain a number of loss mitigation procedures that servicers must follow after a payment default. Alleged violations of these servicing rules form the basis of Plaintiff's Complaint.  For example, the CFPB enacted 12 C.F.R. § 1024.41, which provides that prior to pursuing a foreclosure, servicers need to provide borrowers an opportunity to submit a completed loan modification application (known as the "loss mitigation rule").  Further, among additional requirements, the loss mitigation rules require servicers to make a good faith effort to contact borrowers to inform them

4

of loss mitigation options. 12 C.F.R. § 1024.39. If a lender fails to comply with the provisions of RESPA, borrowers may recover actual damages and any additional damages, in the case of a pattern of noncompliance, in an amount not to exceed $2,000. 12 U.S.C. § 2605. However, the loss mitigation rule is not limitless. 12 CFR § 1024.41(a) provides: "[n]othing in 1024.41 imposes a duty of a servicer to provide any borrower with any specific loss mitigation option. Nothing in 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law."

Furthermore, the regulations currently in effect provide that a servicer is only required to follow the loss mitigation rule procedures for a single, complete loss mitigation application. 12 CFR § 1024.41(i) ("A servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account."). In other words, a borrower may not bring an action for violation of the loss mitigation rule if that borrower has previously availed herself of the loss mitigation process. *Houle v. Green Tree Servicing, LLC*, No. 14-CV-14654, 2015 WL 1867526, at *3 (E.D. Mich. Apr. 23, 2015); *see also Wentzell v. JPMorgan Chase Bank, Nat. Ass'n*, 627 Fed. Appx. 314, 318 n. 4 (5th Cir. 2015) (considering the federal restriction on a mortgage servicer's ability to engage in "dual tracking," the process when lenders evaluate a loss mitigation application while also pursuing a foreclosure. The Fifth Circuit acknowledged that the federal restrictions in the regulations apply only to a borrower's first loss mitigation application and noting that because the claims in that case related

to later alleged loan modifications, they did not state a claim under the federal regulation.). Finally, the loss mitigation rule does not require a borrower actually receive a loan modification; instead, it requires simply that a completed application be properly processed and considered. *Id.*

Defendants argue several reasons why the RESPA claims must be dismissed based on the loss mitigation rules. First, Defendants argue that in considering the plain language of 12 CFR § 1024.41(i), because Defendant FRB previously permanently modified Plaintiff's loan following a default under the terms of the original Note, Plaintiff is unable to bring an action based on the alleged violations of a subsequent loss mitigation application. While Plaintiff does not dispute RESPA includes this language, Plaintiff urges this Court to consider the purpose of RESPA. Plaintiff cites to the official interpretation of the mortgage servicing rules to argue that 12 CFR § 1024.41(i) should not apply because during the course of the second loss mitigation application, Defendant FRB transferred this loan to Defendant Dovenmuehle. Plaintiff argues that this forecloses the argument that the RESPA claims must be dismissed under the plain language of the statute for both Defendant FRB and Defendant Dovenmuehle.

The Court has reviewed the entire language within the interpretation of the "duplicative requests" rule. First, the official interpretation makes clear that after the Bureau requested comment regarding whether borrowers should be entitled to a renewed evaluation for a loss mitigation option if an appropriate time period had passed since the initial evaluation or the borrower experience a material change in circumstances, the Bureau still found it appropriate to

6

limit review to a single complete mitigation application. 78 FR 10696, 10836.[2]  Second, the interpretation itself indicates that the proposed rule "would have" required a transferee servicer to comply with the requirements of 1024.41, "notwithstanding whether a borrower has received a determination on a complete loss mitigation application from a transferor servicer," lending further support to the conclusion that the regulation still requires only a single complete loss mitigation application, regardless of whether at the time the subsequent loss mitigation application commences, and the loan is transferred. 78 FR 10696, 10836.  Third, the language Plaintiff cites regarding when the transferee servicer is required to comply with the loss mitigation requirements appears to apply in the context of when, during the course of the first application, the transferee receives the loan when "an evaluation for a loss mitigation option is *in process* with a transferor servicer, but a borrower has not finalized an agreement on a loss mitigation option." 78 FR 10696, 10836. (emphasis added).  Accordingly, this Court finds that based on the plain language of the regulation, coupled with the commentary to the regulations, RESPA does not apply to Plaintiff's second loss mitigation application.  Even if this language were referring to a transfer that occurred during a second loss mitigation review (as opposed to a transfer during the first application review), and somehow alters the plain language of 12 CFR § 1024.41(i), Plaintiff concedes she was considered for and actually received a trial plan from Defendants as a result of the second loss mitigation application in April of 2016. [ECF #1, p. 11].  Accordingly, this Court notes that

---

[2] In fact, in the recent comments regarding amendments to these regulations in the Federal Register, it is noted that "in the 2013 RESPA Servicing Final Rule, the Bureau required servicers to comply with the loss mitigation procedures in §1024.41 **only once** over the **life of a mortgage loan** for any borrower. Amendments to the 2013 Mortgage Rules Under RESPA (Regulation X) and TILA (Regulation Z), 81 FR No. 202, 722269 (Oct. 19, 2016) (emphasis added).

Defendant Dovenmuehle did actually review and process Plaintiff's loss mitigation application for a subsequent review.

Finally, Plaintiff argues that because she received her previous loan modification prior to the effective date of the section of RESPA under which Plaintiff brings her claims (January 10, 2014), the prior compliance with the previous loan modification has no bearing on this new claim. Plaintiff cites to cases that are factually distinguishable from this case.[3]  In fact, another district court has considered this specific issue and determined that a borrower was not required to comply with RESPA because plaintiffs in that case had previously submitted a loan modification application, even though it was prior to the effective date. *Trionfo v. Bank of America, N.A.*, 2015 WL 5165415, at *4 (D. Md. Sept. 2, 2015) (finding that the ban on "duplicative requests" in RESPA bars those plaintiffs claims under RESPA. Plaintiffs in that case admitted to submitting multiple loan modification applications prior to the one at issue; but plaintiffs argued that this was their first application since the rules went into effect, thus it was not a "duplicative request." The district court rejected this argument and found that the statute is clear that it only applies to borrowers submitting applications for the first time).

Furthermore, in *Trionfo*, plaintiffs had admitted in their complaints and motions that in

---

[3] In *Lage v. Ocwen Loan Servicing, LLC* 839 F.3d 1003, (11th Cir. 2016), the borrowers argued on appeal that the district court erred in granting summary judgment to Ocwen based on the fact that it was not required to comply with § 1024.41 because the borrowers submitted their application before January 10, 2014. The Eleventh Circuit did not reach that issue because borrower's application was untimely regardless. In *White v. Wells Fargo Bank, N.A.*, No. 2:14-CV-12506, 2015 WL 1842811 (E.D. Mich. Apr. 22, 2015), the Court considered and rejected the lender's argument that the statute did not apply because those plaintiffs did not request a loan modification after the effective date.  The *White* Court rejected that argument, relying upon the liberal construction of RESPA and finding that because the present case involved foreclosure proceedings that began once RESPA became effective, the statute applied.

2010, they fell behind on their mortgage payments, and further, that their March 2014 loss mitigation application was their first application since the rules went into effect. *Id.* Bank of America took over as the subsequent service in 2011. *Id.* at *1. The *Trionfo* court reasoned that the statute "clearly only applies to those submitting applications for the first time. As Bank of America points out, protection is only extended to first-time applicants for a reason: 'providing appropriate incentives for borrowers to submit all appropriate information in the application and allow[][ing] servicers to dedicate resources to reviewing applications most capable of succeeding on loss mitigation options.'" *Id.* at *4 (citing Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed Reg. 10696, 10836 (Feb. 14, 2013)). In fact, the *Trionfo* court further states, "I decline to subvert this purpose by permitting the plaintiffs' claim to go forward given that it was not their first application." *Id.* Similarly, Plaintiff's previously loss mitigation application had been reviewed, and in fact Defendant FRB had offered her a loss mitigation option, which Plaintiff accepted. This resulted in the foreclosure action being dismissed against Plaintiff. Similarly, by the time Plaintiff again began submitting loss mitigation paperwork to Defendant FRB, she had already received the benefit of the review of a prior loss mitigation application. Accordingly, this Court finds that the fact that Plaintiff submitted her first loss mitigation application prior to the effective date does not alter this Court's finding that the claims against Defendants based upon RESPA should be dismissed because RESPA does not apply in this case.

However, even if Plaintiff's RESPA claims were actionable under 12 CFR § 1024.41(i), Defendants argue that Plaintiff fails to state a claim under RESPA because she admits she received

9

continued correspondence from Defendants and received a trial payment plan, albeit one she found unaffordable. RESPA requires that a servicer provide the borrower with a notice stating the determination of the loss mitigation options, if any, it is willing to offer, such notice to include the amount of time the borrower has to accept or reject the offer, and a notification that the borrower has the right to appeal the denial of an option. 12 C.F.R. § 1024.41(c)(1)(ii). Further, 12 C.F.R. §1024.41(a) provides that "[n]othing in §1024.41 imposes a duty upon a servicer to provide a borrower with any specific loss mitigation option." Accordingly, Defendants argue that not only did they actually process Plaintiff's loss mitigation application, but they provided her a trial payment plan, though one Plaintiff felt was not financially affordable.

For her part, Plaintiff's response is that Defendants, in sending her a "Denial of Foreclosure Relief (after review)" on January 22, 2016 and basing it on the fact that she failed to "submit a complete loss mitigation workout package for review" is the conduct giving rise to the Complaint because in actuality she did provide complete information on more than one occasion. Specifically, the Complaint states that the RESPA violations are that Defendants "willfully disregarded their obligations and continuously required Plaintiff to resubmit the same information until such time as said information was out of date" and "Defendants also failed to alert Plaintiff upon denial of her loss mitigation request within five days and make known to Plaintiff that she had the right to appeal said decision." [ECF #1, p. 13]. However, Plaintiff states that even after she received the Denial of Foreclosure Relief, Plaintiff continued to provide documents to Defendants, and Defendants actually did eventually send her a letter on April 11, 2016 providing her a loan modification option, albeit one she could not afford. Plaintiff does not offer any

10

explanation as to why this loan modification offer does not comply with RESPA. In any event, this Court previously found RESPA inapplicable to this case.

Finally, Defendants argue that Plaintiff fails to allege any actual damages from the purported RESPA violations, which must be pled in order state a claim for relief, nor has she plead a plausible causal connection for her alleged emotional damages. RESPA allows for actual damages resulting from RESPA violations, and in the case of a "pattern or practice of noncompliance," statutory damages not to exceed $2,000. 12 C.F.R. §1024.41.[4] *See generally Champion v. Bank of America, N.A.*, No. 5:13-CV-00272, 2014 WL 25582, at *4 (E.D.N.C. Jan. 2, 2014) (finding that plaintiffs failed to allege any damages flowing from the purported failure of the servicer pursuant to the statute). Plaintiffs' response is that she sufficiently pleads actual damages because she alleges she suffered actual damages in the form of "increased mortgage costs and fees, humiliation, stress, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, and pain and anguish due to Defendants' violations of RESPA. *See generally Agustin v. PNC Finan. Servs. Group, Inc.*, 707 F. Supp.2d 1080, 1091-92 (D. Haw. 2010)(finding that although the plaintiffs did not allege details of how any RESPA violation caused pecuniary loss, plaintiffs alleged actual damages).[5] This Court need not reach the issue of whether Plaintiff has properly plead actual damages under RESPA, because this Court finds that even assuming all

---

[4] Defendants do not make any argument regarding whether Plaintiff properly plead a "pattern or practice of noncompliance" in requesting statutory damages.

[5] This Court notes that actual damages under RESPA may include emotional distress; however, Plaintiffs are still required to show a plausible causal connection between the alleged emotional damages and the alleged RESPA violations. *See Darby v. PNC Mortgage, N.A.*, No. DKC 16-0210, 2016 WL 7212568, at *6, n. 4 (Dec. 13, 2016) (citing *Zaychick v. Bank of Am., N.A.,* 146 F. Supp. 3d 1273, 1280-81 (S.D. Fla. 2015).

of Plaintiff's allegations to be true, she is unable to state a claim for relief under RESPA and accordingly, the RESPA claims against Defendants must be dismissed.

## II. Negligence Claims and Res Judicata

To state a cause of action for negligence under South Carolina law, Plaintiff must allege the following facts: (1) a duty of care owed by Defendants; (2) a breach of that duty by a negligent act or omissions; (3) resulting damages to the plaintiff; and (4) the damages proximately resulted from the breach of that duty. *Regions Bank v. Scmauch*, 354 S.C. 648, 668, 582 S.E.2d 432 (2003). In other words, order to maintain an action for negligence, a defendant must have been subject to a legal duty. In South Carolina, the general rule is that the normal bank-depositor arrangement creates a creditor-debtor relationship, rather than a fiduciary relationship. *Burwell v. South Carolina Nat. Bank*, 288 S.C. 34, 40, 340 S.E.2d 786, 790 (1986); see also *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 779 (4th Cir. 2013).

Defendants argue that Plaintiff's negligence claims must be dismissed because Defendants do not have a legal duty independent of their contractual duties sufficient to give rise to a negligence claim. The Complaint alleges that Defendants had a "duty to promptly review Plaintiff's complete loan modification application." [ECF #1, p. 14]. Further, the Complaint alleges that "Defendants owed Plaintiff a duty to train their employees on both Federal and State law." [ECF #1, pp. 15-16]. In her brief, Plaintiff alleges she is bringing "common law" claims. [ECF #7, p. 9]. Plaintiff argues that because she is also alleging personal injury, the issue is whether Plaintiff's damages due to Defendants' failure to comply with RESPA was foreseeable.

[ECF #7, p. 10].[6] Defendants further argue the doctrine of res judicata applies regarding the various negligence claims asserted based on the prior stipulation of dismissal. As to whether the negligence claims survive or res judicata applies, this Court will leave that for a state court judge to decide, and this Court declines to exercise supplemental jurisdiction over any state law claims in this lawsuit. *See* 28 U.S.C. § 1367(c)(3). Accordingly, this Court is dismissing all state law claims without prejudice.

## Conclusion

The Court has thoroughly reviewed the entire record, including the pleadings, Defendants' Motion to Dismiss [ECF #5], Plaintiff's Response in Opposition [ECF #7], Defendants' Reply [ECF #8], and the applicable law. For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint [ECF #5] is **GRANTED** in part with prejudice and in part without prejudice. Plaintiff's RESPA claims are dismissed with prejudice. Pursuant to *See* 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts II, III and IV). Accordingly, those claims are dismissed without prejudice.

**IT IS SO ORDERED.**

Florence, South Carolina                                       s/ R. Bryan Harwell
March 21, 2017                                                 R. Bryan Harwell
                                                               United States District Judge

---

[6] Plaintiff cites to *Foster v. American Home Products Corp.*, 29 F.3d 165, 171 (4th Cir. 1994), a case brought against a drug manufacturer in tort and strict liability; however, this case actually found that it would stretch the concept of foreseeability to impose a duty in that case. Nor are its facts applicable to the facts in this case.